# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER COLOMA,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:17-CV-0310-DMC<br><br><br><br>MEMORANDUM OPINION AND ORDER |

      Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties (Docs. 8 and 9), this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are the parties' cross-motions for summary judgment (Docs. 19 and 20). For the reasons discussed below, Plaintiff's motion for summary judgement is granted, the Commissioner's cross motion for summary judgment is denied, and this matter is remanded for further proceedings.

/ / /

/ / /

/ / /

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). The sequential evaluation proceeds as follows:

Step 1   Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

Step 2   If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;

Step 3   If the claimant has one or more severe impairments, determination whether any such severe impairment meets

2

|   |   | or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted; |
|---|---|---|
|   | Step 4 | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
|   | Step 5 | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f)

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity that the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on August 22, 2013. See CAR 21.[1] In the application, plaintiff claims that disability began on August 16, 2013. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on June 23, 2015, before Administrative Law Judge (ALJ) Evangelina P. Hernandez. In an August 11, 2015, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): diabetes mellitus with peripheral neuropathy and diabetic nephropathy, congestive heart failure, cardiomyopathy, hypertension, chronic kidney disease, and obesity;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: light work;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 23-33.

After the Appeals Council declined review on December 13, 2016, this appeal followed.

## III. DISCUSSION

In making a finding of "not disabled" the ALJ reviewed the medical evidence in the record as well as the medical opinions and lay witness opinions in the case. In the ALJ's review of the evidence the ALJ stated in relevant part:

> The claimant is a 40-year old former heavy machinery operator who complains of fatigue, dizzy spells, weakness, headaches, nausea, vomiting, frequent urination, shortness of breath, and chest pain. He also complains of nerve pain, numbness, and tingling sensation in the extremities. He allegedly had difficulty with physical exertion, postural activities, and breathing. He allegedly needs to lie down after physical activity and rest or take naps for an hour 4 times a day.

---

[1] Citations are the to the Certified Administrative Record (CAR) lodged on August 15, 2017 (Doc. 13).

He is generally independent in activities of daily living. He can carry out household chores, such as doing laundry, making a bed, vacuuming, sweeping, mopping, and washing a car. He has the ability to drive, ride a bicycle, and work on a car. He admittedly can lift 25 to 30 pounds at a time.

The claimant attended face-to-face interviews with an employee of the Social Security Administration on August 22, 2013 and January 13, 2014. The interviewer did not observe any physical difficulties.

The claimant was hospitalized for malignant hypertension, non-ischemic dilated cardiomyopathy, poorly controlled diabetes, and kidney disease from August 16, 2013 through August 21, 2013. However, his condition improved quickly and he was discharged within several days. His headache improved and his chest pain was resolved soon after admission. His blood pressure was also better controlled by the time of discharge. In addition, there is little objective evidence that he has required further emergency treatment or hospitalization for these conditions. Moreover, as discussed in detail below, the treatment records reflect that his diabetes, heart problems, hypertension, and kidney disease have improved since this hospitalization.

…

After careful review of the evidence, I find that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

…

As for the opinion evidence, H. Jone, M.D. and D. Pong, M.D., non-examining state agency medical consultants [t]hese opinions allowing the claimant to perform some work are given some weight[.]

…

The claimant's father completed a third party function report on January 30, 2014, which largely corroborated the claimant's allegations. This report is given little weight[.]

…

In summary, based on a review of the medical evidence of record, as well as the claimant's testimony at the hearing and the record as a whole, I find that the evidence contained in the record does not support the claimant's allegations of total incapacitating symptoms. The claimant has retained the capacity to perform light work with some postural limitations throughout the period under consideration.

CAR 28-31.

In his motion for summary judgment, plaintiff argues: (1) the ALJ failed to provide sufficient reasons for rejecting the opinions of reviewing non-examining physicians, Drs. Jone and Pong; (2) the ALJ failed to provide sufficient reasons for rejecting plaintiff's statements and testimony, as well as a third-party statement provided by plaintiff's father; and (3) the ALJ failed to fully develop the record.

### A. Evaluation of the Medical Opinions

In completing Step 4 of the analysis, the ALJ found Plaintiff had the residual functional capacity (RFC) to "perform light work as defined by 20 CFR 404.1567(b) and 416.967(b), but he cannot crawl or climb ladders, ropes, or scaffolds. . . [,] only occasionally climb ramps and stairs [and] can only frequently balance, stoop, kneel, and crouch." CAR 27. In making this determination the ALJ concluded that the "opinion evidence [of] H. Jones, M.D., and D. Pong, M.D., non-examining State agency medical consultants… are given some weight." CAR 30. Plaintiff alleges the ALJ failed to provide sufficient justification for not affording full weight to Dr. Jone's and Dr. Pong's medical opinions related to Plaintiff's ability to perform "some work". CAR 30.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831.

6

While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

Plaintiff contends that the ALJ erred in according only "some weight" to Dr. Jone's and Doctor Pong's opinions. This court disagrees. Because Drs. Jone and Pong are reviewing professionals there must be substantial evidence in the record to support the rejection of their opinions. The ALJ identifies two primary reasons for rejecting portions of these opinions: (1) the opinions understate Plaintiff's exertional capacity and are somewhat contradicted by the general improvements in Plaintiffs physical impairments; and (2) the opinions are somewhat inconsistent with Plaintiff's admitted ability to be generally independent in activities of daily living, perform many household chores, drive, ride a bicycle, work on a car, and lift up to 20 to 30 pounds at a time. See CAR 30-31. After reviewing the record, this courts finds the ALJ's determinations as to the opinions of the reviewing professionals are supported by substantial evidence.

The ALJ reviewed at length the medical evidence and the improvements noted within the medical reports. CAR 28-29. The ALJ determined,

> As for the opinion evidence, H. Jone, M.D. and D. Pong, M.D., non-examining state agency medical consultants, found that the claimant could perform sedentary work with no climbing of ladders ropes, or scaffolds, no crawling, occasional climbing of ramps and stairs, and frequent balancing, stooping, kneeling, and crouching. These opinions allowing the claimant to perform some work are given some weight because they are supported by the generally adequate physical functioning that the claimant exhibited throughout the adjudicated period. In addition, the opinions are consistent with the absence of recommendation for aggressive treatment for the claimant's cardiovascular or kidney disease. Moreover, the opinions are consistent with the lack of positive findings from a nerve conduction study or an electromyogram concerning the claimant's diabetic peripheral neuropathy in the objective medical evidence. Furthermore, the opinions are not contradicted by the opinion of any treating physician. However, the opinions understate the claimant's exertional capacity and are somewhat contradicted by the general improvements in the claimant's physical impairments, which are well documented by the treatment records and the cardiac testing done in 2014. The opinions are also somewhat inconsistent with the claimant's admitted ability to be generally independent in activities of daily living, perform many household chores, drive, ride a bicycle, work on a car, and lift up to 25 to 30 pounds at a time.

CAR 30.

A review of the record reveals that the ALJ's above stated determination is supported by substantial evidence. The ALJ cites over fourteen medical documents in the record when discussing the improvement of Plaintiff's malignant hypertension, cardiomyopathy, diabetes, kidney disease, congestive heart failure, and obesity. See CAR 28-29. Each of these documents supports the ALJ's conclusion that Dr. Jone and Dr. Pong "understate claimant's exertional capacity." CAR 30. The improvements indicated by the cited medical records also support the ALJ's conclusion that Dr. Jone's and Dr. Pong's opinions are "somewhat contradicted by the general improvements in the claimant's physical impairments." Id. Even if, as the Plaintiff alleges, the medical evidence could be read to support a contrary conclusion, there is sufficient evidence in the record to support the conclusion of the ALJ, and thus this Court cannot find error in the ALJ's determination. See Barnhart, 278 F.3d at 954 (stating where the evidence is

susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed).

The Court does note that the ALJ also relied on Plaintiff's ability to perform daily living tasks as justification for affording only some weight to Dr. Jone's and Dr. Pong's opinions. This Court does not rely on this section of the ALJ's decision. The ALJ's analysis of Plaintiff's daily living fails to account for Plaintiff's limiting statements related to his capabilities and is thus incomplete. For example, the ALJ notes that Plaintiff can lift 25 to 30 pounds, yet fails to address Plaintiff's qualifying language that he can "lift it every once in a while" and "anything over 10 pounds, I'm, like, totally exhausted. And I just want to lie down and sleep." CAR 53-54. Additionally, the ALJ cites to exhibit 4E to support the contention that Plaintiff is capable of preforming household chores, yet fails to account for his statement that he has difficulty performing chores longer than 20 minutes due to shortness of breath. CAR 248. For this reason, this Court upholds the ALJ's decision to give only some weight to the opinions of Drs. Jone and Pong based on the conflicting medical evidence, not based on the ALJ's incomplete analysis of Plaintiff's daily living abilities.

Thus, the ALJ did not err by affording only some weight to Dr. Jone's and Dr. Pong's opinions.

**B.** **Evaluation of Lay Witness and Claimant Testimony**

In weighing the evidence before her, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." CAR 29-30. Additionally, the ALJ determined that Plaintiff's father's third-party functioning report, dated January 30, 2014, "is given little weight because [Plaintiff]'s father is not an acceptable medical source and lacks the medical proficiency to render a reliable opinion on [Plaintiff]'s limitations." CAR 31. The ALJ also noted that Plaintiff's father's report was "contradicted by the generally adequate physical functioning that [Plaintiff] exhibited throughout the adjudicated period …[and] by the general improvements in [Plaintiff]'s physical impairments …[and] [Plaintiff]'s admitted activities of daily living." Id. Plaintiff contends that the ALJ erred in assessing his and his father's

credibility. Specifically, Plaintiff argues that his father's testimony is supported by the record and that the ALJ afforded "little weight" to his statements without articulating clear and convincing reasons for doing so.

### 1. Lay Witness Testimony

In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919. The ALJ may cite same reasons for rejecting plaintiff's statements to reject third-party statements where the statements are similar. See Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

The ALJ, however, need not discuss all evidence presented. See Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Rather, he must explain why "significant probative evidence has been rejected." Id. (citing Cotter v. Harris, 642 F.2d 700, 706 (3d Cir.1981). Applying this standard, the court held that the ALJ properly ignored evidence which was neither significant nor probative. See id. at 1395. As to a letter from a treating psychiatrist, the court reasoned that, because the ALJ must explain why he rejected uncontroverted medical evidence, the ALJ did not err in ignoring the doctor's letter which was controverted by other medical evidence considered in the decision. See id. As to lay witness testimony concerning the plaintiff's mental functioning as a result of a second stroke, the court concluded that the evidence was properly ignored because it "conflicted with the available medical evidence" assessing the plaintiff's mental capacity. Id.

10

In Stout v. Commissioner, the Ninth Circuit recently considered an ALJ's silent disregard of lay witness testimony. See 454 F.3d 1050, 1053-54 (9th Cir. 2006). The lay witness had testified about the plaintiff's "inability to deal with the demands of work" due to alleged back pain and mental impairments. Id. The witnesses, who were former co-workers testified about the plaintiff's frustration with simple tasks and uncommon need for supervision. See id. Noting that the lay witness testimony in question was "consistent with medical evidence," the court in Stout concluded that the "ALJ was required to consider and comment upon the uncontradicted lay testimony, as it concerned how Stout's impairments impact his ability to work." Id. at 1053. The Commissioner conceded that the ALJ's silent disregard of the lay testimony contravened Ninth Circuit case law and the controlling regulations, and the Ninth Circuit rejected the Commissioner's request that the error be disregarded as harmless. See id. at 1054-55. The court concluded:

> Because the ALJ failed to provide any reasons for rejecting competent lay testimony, and because we conclude that error was not harmless, substantial evidence does not support the Commissioner's decision . . .

Id. at 1056-67.

From this case law, the court concludes that the rule for lay witness testimony depends on whether the testimony in question is controverted or consistent with the medical evidence. If it is controverted, then the ALJ does not err by ignoring it. See Vincent, 739 F.2d at 1395. If lay witness testimony is consistent with the medical evidence, then the ALJ must consider and comment upon it. See Stout, 454 F.3d at 1053. However, the Commissioner's regulations require the ALJ consider lay witness testimony in certain types of cases. See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); SSR 88-13. That ruling requires the ALJ to consider third-party lay witness evidence where the plaintiff alleges pain or other symptoms that are not shown by the medical evidence. See id. Thus, in cases where the plaintiff alleges impairments, such as chronic fatigue or pain (which by their very nature do not always produce clinical medical evidence), it is impossible for the court to conclude that lay witness evidence concerning the plaintiff's abilities is necessarily controverted such that it may be properly

ignored. Therefore, in these types of cases, the ALJ is required by the regulations and case law to consider lay witness evidence.

Plaintiff asserts, but provides almost no argument in his briefing, that the ALJ improperly gave little weight to his father's testimony. Given the lack of argument in Plaintiff's briefing, it is difficult to discern Plaintiff's precise argument. However, Plaintiff seems to argue his father's testimony is consistent with the evidence in the record. This Court disagrees. The ALJ reviewed the testimony of Plaintiff's father, compared it to the medical evidence in the record, and concluded that his father's testimony was not consistent with the medical evidence. See CAR 28-29, 31. The ALJ cited to seven medical documents demonstrating Plaintiff's generally adequate physical functioning, and four medical documents demonstrating Plaintiff's general improvements in his physical impairments. CAR 31. The ALJ then concluded that these medical documents all contradict the testimony of Plaintiff's father. A review of these documents, Plaintiff's father's testimony, and the record as a whole supports this conclusion. For that reason, this court finds the ALJ properly concluded that the medical evidence contradicted Plaintiff's father's testimony. Because an ALJ may properly discredit lay witness testimony if it is controverted by the medical evidence in the record the ALJ did not err by giving Plaintiff's father's testimony little weight. See Vincent, 739 F.2d at 1395.

### 2. Plaintiff's Testimony

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d

1155, 1160 (9th Cir. 2008) (citing <u>Lingenfelter v Astrue</u>, 504 F.3d 1028, 1936 (9th Cir. 2007), and <u>Gregor v. Barnhart</u>, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. <u>See</u> <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in <u>Smolen v. Chater</u>:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the <u>Cotton</u> test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in <u>Cotton v. Bowen</u>, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. <u>See</u> <u>Bunnell</u>, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. <u>See</u> <u>Smolen</u>, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. <u>See</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. <u>See</u> <u>Carmickle</u>, 533 F.3d at 1161 (citing <u>Swenson v. Sullivan</u>, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated. <u>See</u> <u>Fair v. Bowen</u>, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has

repeatedly held that the "... mere fact that a plaintiff has carried out certain daily activities ... does not ...[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is "...able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

Plaintiff contends that the ALJ improperly rejected his testimony as to the nature and the extent of his functional limitations. This court agrees. The ALJ stated that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision [,]" leaving this court to scour the decision to determine if such a conclusion is "supported by specific [and] cogent reasons." Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). The ALJ found that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," but declined to credit Plaintiff's statements as to the severity of the symptoms. CAR 29. The ALJ seems to identify four reasons for rejecting Plaintiffs statements: (1) the statements are not supported by objective medical evidence; (2) the statements are not supported by the treatment evidence in the record; (3) Plaintiff's daily activities conflict with his alleged pain limitations; and (5) during Plaintiff's interviews there were no observed physical difficulties.

In outlining the above reasons, the ALJ fails to "identify what testimony is not credible and what evidence undermines the testimony." Lester, 81 F.3d at 834; See also Smolen, 80 F.3d at 1284 (stating that an ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion). To the extent the ALJ notes any of Plaintiff's symptoms in her review of the evidence it occurs during the review of the medical records. However, an ALJ may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell, 947 F.2d at 347-48. For that reason, the ALJ must identify the testimony that is not credible and the evidence, other than just objective medical evidence, that undermines that testimony. However, when reviewing the ALJ's analysis regarding Plaintiff's treatment, Plaintiff's daily living, and the observations at the interview, it is unclear what specific testimony is undermined by the evidence. The ALJ fails to link any of the cited evidence with any of Plaintiff's symptom testimony. Instead the ALJ simply cites to medical evidence and the general adequacy of Plaintiff's functioning, without any link to how they conflict with, or undermine, Plaintiff's statements. These amount to "general findings" that are insufficient to support a less than credible determination. See Rashad, 903 F.2d at 1231 (holding an explicit credibility finding must be supported by specific, cogent reasons), Lester, 81 F.3d at 834 (holding general findings are insufficient).

The ALJ's citation of objective medical evidence, treatment evidence, daily living evidence, and observations during an interview, without a connection to Plaintiff's symptom testimony, is insufficient to meet the clear and convincing evidence standard. Thus, the ALJ erred by failing to specify which symptom testimony is not credible and what facts lead to that conclusion as required by Smolen. See Smolen, 80 F.3d at 1284.

**C.     Duty to Develop the Record**

Plaintiff alleges that the ALJ did not properly develop the record in this case. Specifically, Plaintiff contends that the ALJ failed to adequately question Mr. Coloma and failed to order a consultative examination.

The ALJ has an independent duty to fully and fairly develop the record and assure the claimant's interests are considered. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). When the claimant is not represented by counsel, this duty requires the ALJ to be especially diligent in seeking all relevant facts. See id. This requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978). Ambiguous evidence or the ALJ's own finding that the record is inadequate triggers this duty. See Tonapetyan, 242 F.3d at 1150. The ALJ may discharge the duty to develop the record by subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow for supplementation of the record. See id. (citing Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998)).

Here, the ALJ looked at objective medical evidence, Plaintiff's treatment history, reviewing physician reports, Plaintiff's activities of daily living, witness statements, and other relevant evidence. Though, as Plaintiff contends, a consultative examination or additional medical reports would add to the record, the ALJ is not required to order them. See 20 C.F.R. § 404.159(a). The ALJ subpoenaed all available medical records, conducted in person interviews, collected functioning reports from Plaintiff and third parties, obtained medical opinions from State agency physicians, and worked to accommodate Plaintiff's needs to postpone the adjudication of the matter. Because the ALJ may "discharge the duty to develop the record by subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, [and] continuing the hearing," this court finds the ALJ properly developed the record in this case. Tonapetyan, 242 F.3d at 1150. For that reason, this court finds that the ALJ did not err in her development of the record in this case.

### IV. CONCLUSION

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above.

///

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 19) is granted;

2. Defendant's motion for summary judgment (Doc. 20) is denied;

3. The Commissioner's final decision is reversed and this matter is remanded for further proceedings consistent with this order; and

4. The Clerk of the Court is directed to enter judgment and close this file.

Dated: November 2, 2018

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE